KEKER & VAN NEST, LLP
R. JAMES SLAUGHTER - #192813
RYAN M. KENT - #220441
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiffs
ELECTRONIC ARTS INC. and ELECTRONIC ARTS MUSIC PUBLISHING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC ARTS INC., a Delaware Corporation, and ELECTRONIC ARTS MUSIC PUBLISHING, INC., a Delaware Corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>GIANT PRODUCTIONS, a French Corporation, NAJIB MARC REGHAY, an individual, and ALEXANDRA BERTHET, an individual,<br><br>        Defendants. | Case No. C06-3403 JSW<br><br>**APPLICATION FOR DEFAULT JUDGMENT** |

## I.   INTRODUCTION

Plaintiffs Electronic Arts Inc. and Electronic Arts Music Publishing, Inc. (collectively "EA") hereby request that the Court enter default judgment in this matter against Defendants Giant Productions, Najib Reghay, and Alexandra Berthet.

More than six months have passed since EA filed its Complaint on May 24, 2006—and since Defendants waived service—and yet, no Defendant has filed a responsive pleading. During this time, EA has diligently served all orders and pleadings on French counsel for Defendants, including the Initial Scheduling Conference Order, the Requests for Entry of Default, the Clerk's Notices of Entry of Default, and EA's Separate Case Management Statement. EA has received no response. Accordingly, EA sought—and the Clerk entered—default against each of the Defendants in this case. Pursuant to Federal Rule of Civil Procedure 55(b)(2), this Court should now enter default judgment against Defendants, and for the reasons set forth below, order all of the relief that EA seeks in its Complaint.

## II.   FACTUAL BACKGROUND

EA develops, publishes and distributes interactive entertainment software products, including *FIFA 2005*—an interactive soccer simulation game. As a part of such games, EA often licenses and otherwise acquires the rights to certain sound recordings which it incorporates into game play during operation of the game. *See* Compl., ¶ 11. In January 2004, EA held a special competition during the 38th International Music Market (MIDEM) conference wherein participants in the conference competed to have their songs selected for potential inclusion in EA's FIFA 2005 game and soundtrack thereto. *Id*., ¶ 12.

As a part of that competition, defendants Reghay and Berthet submitted a composition entitled "A Necessidade" (the "Composition") for EA's consideration. The Composition won the competition, and EA approached Reghay and Berthet to negotiate and obtain the legal rights to use the Composition in FIFA 2005. *Id*., ¶ 13. Following more than two months of negotiations, EA entered into the following three agreements with Reghay, Berthet and their production company Giant:

- The Assignment of Copyright dated March 29, 2004 (the "Assignment") attached to the Complaint as Exhibit A, wherein EA acquired fifty percent (50%) of the rights under copyright to the Composition by assignment in exchange for a cash payment;

- The "Interactive Media Synchronization and Performance License" dated March 29, 2004 (the "Synch License Agreement") attached to the Complaint as Exhibit B, wherein EA obtained a license to use the other 50% of the rights under copyright to the Composition; and

- The "Interactive Media Master Use and Performance License" dated March 29, 2004 (the "Master License Agreement") attached to the Complaint as Exhibit C, wherein EA obtained a license to use the master recordings of the Composition.

*Id.*, ¶¶ 14, 15.

In each of the Synch License and Master License Agreement, Giant[1] represented and warranted that it owned, controlled or administer the rights that EA was acquiring. *Id.*, ¶¶ 21, 22. In paragraph 10 of the Synch License Agreement, Giant warranted that it "owns, controls or administers 50% of the rights under copyright in and to the Composition, throughout the [world], and that [it] has the right to grant the rights granted hereunder, that [EA] will not be required to make any payments in connection with its use of the Composition except as specifically set forth herein, and that [EA's] use of the Composition in accordance with the License will not infringe the rights of any third party." Compl., Ex. B, ¶ 10.[2] Likewise, in paragraph 10 of the Master License Agreement, Giant warranted that it "owns, controls or administers 100% of the rights under copyright in and to the Master, throughout the [world], and that [it] has the right to grant the rights granted hereunder, that [EA] will not be required to make any payments in connection with its use of the Composition except as specifically set forth herein, and that [EA's] use of the Composition in accordance with the License will not infringe the rights of any third party." Compl., Ex. C, ¶ 10.

Giant also agreed in each of those Agreements to indemnify and hold EA harmless

---

[1] EA entered into the Synch License and Master License Agreements with Giant—and not Reghay or Berthet—at the express direction of Reghay acting on behalf of himself and Berthet. Indeed, Reghay himself executed those Agreements as the president of Giant, having represented to EA that he had power of attorney to sign for Giant. *See* Compl., ¶ 16. It is common in the music industry for a music production company to own or control right to a musical composition or master recording.

[2] EA obtained the rights to the other 50% of the Composition from the Assignment, attached as Exhibit A to the Complaint.

1  against any expenses that arise out of any claim by a third party that is inconsistent with the
2  above representations and warranties.  In paragraph 10 of the Synch License Agreement, Giant
3  agreed that it "will indemnify and hold [EA] harmless against any and all claims, liabilities,
4  losses, damages or expenses (including reasonable attorneys fees and court costs) incurred by
5  [EA] which arise out of any claim by a third party which is inconsistent with [Giant's]
6  representations, warranties and agreements hereunder."  Compl., Ex. B, ¶ 10.  In paragraph 10 of
7  the Master License Agreement, Giant agreed that it "will indemnify and hold [EA] harmless
8  against any and all claims, liabilities, losses, damages or expenses (including reasonable
9  attorneys fees and court costs) incurred by [EA] which arise out of any claim by a third party
10 which is inconsistent with [Giant's] representations, warranties and agreements hereunder."
11 Compl., Ex. C, ¶ 10.

12     Having obtaining 100% of the rights under copyright to the Composition and the master
13 recordings of the Composition, EA incorporated the Composition into FIFA 2005.  *Id*., ¶ 17.
14 *FIFA 2005* was commercially released in North America and Europe in October 2004.  *Id*., ¶ 18.

15     Eighteen months later, however, Reghay and Berthet brought a writ of summons before
16 the Paris Court of First Instance (the "French Action") that challenged EA's right to use the
17 Composition in *FIFA 2005*.  Specifically, the writ of summons alleged, *inter alia*, that inclusion
18 by EA of the Composition in *FIFA 2005* constitutes copyright infringement because it was
19 included without the authors' consent, and asked the French court to order EA to pay €150,000
20 to Reghay and Berthet as a provision to be deducted from their alleged additional damages for
21 infringement.  *Id*., ¶ 19.  In addition, the writ of summons also sought declarations by the court in
22 the French Action that each of the Assignment, the Synch License Agreement and Master
23 License Agreement is null and void.  *Id*., ¶ 20.  At least for the Synch License Agreement, the
24 writ of summons contends that Giant had no authority to license the 50% of the rights under
25 copyright in and to the Composition because it did not hold those rights.  *Id*.

26     Believing the claims in the French Action to be inconsistent with Giant's representations
27 and warranties in the Synch License and Master License Agreements, on April 4, 2006, EA sent
28 a letter entitled "Demand for Indemnification" to Giant demanding that Giant indemnify and

3
APPLICATION FOR DEFAULT JUDGMENT
Case No. C06-3403 JSW

381878.04

defend EA against the claims asserted in the French Action. *Id.*, ¶ 24.  In its response dated April 25, 2006, Giant refused to do so, asserting that EA is not entitled to indemnification. *Id*. Thus, on May 24, 2006, EA brought suit against Reghay, Berthet and their production company Giant.  EA brought suit in California pursuant to the exclusive forum-selection clauses in paragraph 11 of the Synch License Agreement and paragraph 12 of the Master License Agreement.  *See* Compl., Ex. B, ¶ 11d & Compl., Ex. C, ¶ 12d.

### III.   ARGUMENT

**A.   The Court should enter default judgment against the Defendants.[3]**

As evidenced by the E-filing docket sheet for this case, EA filed its Complaint on May 24, 2006.  EA elected to request waiver of service from Defendants, and thus, on May 26, 2006, sent through reliable means requests to waive service in accordance with Rule 4(d).  Each Defendant agreed to waive service and returned an executed waiver of service.  EA filed those executed waivers on June 5, 2006, and September 20, 2006.[4]

Pursuant to Rule 4(d)(3) of the Federal Rules of Civil Procedure, Defendants had 90 days after the date on which the request for waiver of service was sent to respond.  Accordingly, Defendants should have filed a responsive pleading on or before August 25, 2006.  No such responsive pleading has been filed.  Accordingly, EA asked the Clerk enter default in this matter.  The Clerk did so as to defendants Reghay and Berthet on September 20, 2006, and as to defendant Giant Productions on September 22, 2006.

EA now moves the Court to enter default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2).  More than six months have passed since EA filed its Complaint—and since Defendants waived service—and yet, no Defendant has filed a responsive

---

[3] The facts stated herein are set forth in the accompanying declaration of Ryan M. Kent, filed herewith.

[4] When EA originally filed the executed waivers on June 5, 2006, EA accidentally filed two of the same waiver and thus neglected to file Giant Productions' waiver of service.  This error was noticed when EA moved for entry of default, and promptly corrected by the filing of Giant Productions' waiver of service as reflected in the docket.

pleading.  During this time, EA has diligently served all orders and pleadings on French counsel for Defendants, including the Initial Scheduling Conference Order, the Requests for Entry of Default, the Clerk's Notices of Entry of Default, and EA's Separate Case Management Statement.  EA has received no response.  Therefore, EA asks this Court to order the relief that EA seeks in its Complaint.

**B.     The Court should order all of the relief that EA seeks in its Complaint.**

**1.     The Court should enter declaratory judgment that Giant is required to indemnify and hold EA harmless.**

EA asks the Court to enter declaratory judgment that Giant is required to indemnify and hold EA harmless against the claims asserted in the French Action as well as against any liabilities, losses, damages or expenses (including reasonable attorneys' fees and court costs) arising out of those claims.  *See* Compl., Prayer for Relief at ¶ 1.

In each of the Synch License and Master License Agreement, Giant represented and warranted to EA that Giant "has the right to grant the rights granted hereunder, . . . that [EA's] use of the Composition in accordance with the License ***will not infringe the rights of any third party***."  Compl., Exh. B, ¶ 10 & C, ¶ 10 (emphasis added).  Yet, eighteen months after making that representation, the authors of that work—Reghay and Berthet—claim that the inclusion by EA of the Composition in *FIFA 2005* constitutes copyright infringement because it was included without their consent.  That claim is inconsistent with the representations and warranties made by Giant, and therefore Giant must indemnify and hold EA harmless against the claims and expenses that arise out of the claims asserted in the French Action.  *Id*.  (Giant "must indemnify and hold [EA] harmless against any and all claims, liabilities, losses, damages or expenses (including reasonable attorneys fees and court costs) incurred by [EA] which arise out of any claim by a third party which is inconsistent with [Giant's] representations, warranties and agreements hereunder.").

**2.     The Court should enter declaratory judgment that Giant breached the Synch License and Master License Agreements.**

EA asks the Court to enter declaratory judgment that Giant has breached the Synch License and Master License Agreements by refusing to indemnify or hold EA harmless against the claims asserted in the French Action. *See* Compl., Prayer for Relief at ¶ 2.

As explained above in Part B.1, Giant has an obligation under the Synch License and Master License Agreements to indemnify or hold EA harmless against the claims asserted in the French Action. When EA demanded that Giant perform its obligation in its April 4, 2006 letter entitled "Demand for Indemnification," Giant refused to do so, and thereby breached the Synch License and Master License Agreements. *Id*., ¶ 24.

**3.     The Court should enter declaratory judgment that Defendants must pay the attorneys' fees and costs incurred by EA in defending against the French Action.**

EA asks the Court to enter declaratory judgment that Giant, Reghay, and Berthet, jointly and severally, must pay the attorneys' fees and costs from the date of any judgment as such fees and costs are incurred by EA as a result of its defense of the French Action. *See* Compl., Prayer for Relief at ¶ 5.

As explained above in Part B.1, Giant is obligated to indemnify and hold EA harmless in paying any expenses (including reasonable attorneys fees and court costs) incurred by EA in defending the French Action. Compl., Exh. B, ¶ 10 & C, ¶ 10. In addition, Reghay and Berthet also should be declared to be liable for all attorneys' fees and costs incurred by EA in defending the French Action. Reghay is the president of Giant, and represented to EA that he had power of attorney to sign for Giant. *See* Compl., ¶ 16. Indeed, Reghay (acting on behalf of himself and Berthet) told EA that EA should enter into the Synch License and Master License Agreements with their production company Giant—and not them individually. *Id*. Thus, Reghay and Berthet are the alter egos of Giant and are jointly and severally liable for Giant's obligations to EA. *Id*., ¶ 6.

**4. The Court should enter declaratory judgment that each of the Assignment of Copyright, the Synch License Agreement, and the Master License Agreement is valid and enforceable.**

EA asks the Court to enter declaratory judgment that each of the Assignment of Copyright, the Synch License Agreement, and the Master License Agreement is valid and enforceable. *See* Compl., Prayer for Relief at ¶ 6.

EA approached defendants Reghay and Berthet to negotiate and obtain the legal rights to use the Composition in FIFA 2005 after that Composition won a special competition at the 38th MIDEM conference. *Id*., ¶¶ 12, 13. Following more than two months of negotiations, the parties reached agreement on the terms under which EA could use the Composition in FIFA 2005, and EA entered into the Assignment of Copyright, the Synch License Agreement, and the Master License Agreement with Reghay, Berthet and their production company, Giant. *Id*., ¶13. Those signed contracts (attached to the Complaint as Exhibits A, B, and C) are valid and enforceable.

**5. The Court should enter an anti-suit injunction that enjoins Reghay and Berthet from proceeding with the French Action.**

EA asks the Court to enter an anti-suit injunction that enjoins Reghay and Berthet from proceeding with the French Action in violation of the unequivocal forum-selection clause in each of the Synch License Agreement and the Master License Agreement. *See* Compl., Prayer for Relief at ¶ 7.

Although the Court cannot order a foreign court to halt proceedings, it can "restrain a party subject to its jurisdiction from proceeding in a foreign court in circumstances that are unjust." *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006). It is thus appropriate to enjoin a party from proceeding with a foreign suit where the parties and the issues involved in the domestic and foreign suits are the same, and the foreign litigation would frustrate a policy of the forum issuing the injunction. *Id*. at 991. Thus, where a foreign litigation is brought in contravention of a valid and enforceable forum-selection clause, a court may—and should—enter an anti-suit injunction. *Id*. (holding that district court abused its discretion in

refusing to enter an anti-suit injunction where a defendant had initiated a protracted litigation in a foreign country in direct contravention of a forum-selection clause).

Reghay and Berthet brought suit against EA challenging the validity of the Synch License Agreement and the Master License Agreement in France.  By choosing to bring suit in France—and not California—Reghay and Berthet have attempted to render the forum-selection clauses in paragraph 11 of the Synch License Agreement and paragraph 12 of the Master License Agreement nullities.  *See* Compl., Ex. B, ¶ 11d & Ex. C, ¶ 12d.  Those forum-selection clauses unequivocally require that "*[a]ny* controversy arising hereunder *shall be* adjudicated in a court of competent jurisdiction, located within the State of California," *id*. (emphasis added), and are presumed valid under California and federal law.  *See Smith, Valentino & Smith, Inc. v. Superior Court* , 17 Cal.3d 491, 495-496 1976); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10-12 (1972).  Because the French Action involves the same parties and issues as this action and threatens to nullify the forum-selection clauses in the Synch License and Master License Agreements, this Court should enjoin Reghay and Berthet from proceeding in the French action.

### 6. The Court should award money damages to reimburse EA for its defense of the French Action.

EA asks the Court to award damages in the amount of attorneys' fees and costs incurred by EA to date of the entry of this Judgment as a result of its defense of claims raised in the French Action—an amount equal to $35,528.30.  *See* Compl., Prayer for Relief at ¶¶ 3, 4.

As explained above in Part B.1, EA is entitled to expenses (including reasonable attorneys' fees and court costs) arising out of its defense of claims asserted in the French Action.  That amount clearly includes all attorneys' fees and costs incurred in attempting to resolve the French Action.  Accordingly, the amount of expenses includes not only the attorneys' fees and costs spent defending the French Action, but also the attorneys' fees and costs spent maintaining this action, which (for example) seeks an anti-suit injunction that would compel Reghay and Berthet to dismiss the French Action.

Further, pursuant to 28 U.S.C. §1961 and 40 U.S.C. §258(e)(1), EA is entitled to post-judgment interest in an amount that accrues at the rate of $4.77 per day.[5]

## IV.    CONCLUSION

For all of the above-stated reasons, EA respectfully requests that the Court enter judgment against Defendants and order all of the relief requested in the Complaint.

Respectfully submitted,

DATED:  December 8, 2006                     KEKER & VAN NEST, LLP


By: _____/s/ Ryan Kent_____
Ryan M. Kent
Attorneys for Plaintiffs
ELECTRONIC ARTS, INC. and
ELECTRONIC ARTS MUSIC
PUBLISHING, INC.

---

[5] EA calculates the interest per day using the rate for 1-year Treasury Constant Maturities yield—which is currently 4.90%.